UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TAMMY S. TOMISMAN,

                        Plaintiff,

                                                    08-CV-6048

                  v.                          **DECISION**
                                              **and ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.

_____

<u>**INTRODUCTION**</u>

Plaintiff Tammy Tomisman ("Plaintiff") brings this action pursuant § 205(g) of the Social Security Act seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits and Supplemental Security Income ("SSI") benefits pursuant to Title II and Title XVI of the Social Security Act ("the Act"). The plaintiff claims that the Commissioner erred in not finding her disabled with the meaning of the Act and is not supported by substantial evidence in the record and should be reversed.

The Commissioner moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on grounds that the ALJ's decision was supported by substantial evidence. Plaintiff opposes the Commissioner's motion and cross-moves for judgment on the pleadings, on grounds that the Commissioner's decision was erroneous and not supported by substantial evidence in the record. For the reasons as set forth below, I find that the Commissioner's decision is not supported by the substantial evidence contained in the record, and that the evidence in the record supports a finding that the plaintiff is

disabled.  As a result, I grant plaintiff's cross-motion for judgment on the pleadings, deny defendant's motion for judgment on the pleadings, and remand this action to the Commissioner solely for calculation and payment of benefits.

## BACKGROUND

Plaintiff Tammy Tomisman applied for disability insurance benefits on April 15, 2005 and SSI on August 11, 2005 claiming that she had been disabled since May 15, 2002 due to neck pain radiating down her arms, to her hands, and in both legs.  (Tr. 79.)  Plaintiff's applications were initially denied, and plaintiff thereafter requested a hearing before an Administrative Law Judge ("ALJ").  On March 22, 2007, plaintiff and her counsel appeared at a hearing before ALJ Barry E. Ryan.  Thereafter, in a decision dated May 16, 2007, the ALJ found that the plaintiff was not disabled.  (Tr. 25-33.)  His decision became final when, on September 18, 2007, the Appeals Council denied plaintiff's request for review.  Following the denial of review by the Appeals Council, plaintiff timely filed the instant action.

## DISCUSSION

### I.  Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits.  Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by substantial evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II. **Proof of Disability**

To establish disability under the Social Security Act, a claimant must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. § 423(d)(1)(A). The statute additionally requires that the claimant's impairment be

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 423(d)(2)(A).

In making a determination as to a plaintiff's disability, the Commissioner is required to apply the five-step process set forth in 20 C.F.R. § 416.920. The Second Circuit has described this process as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience .... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

See Bush v. Shalala, 94 F.3d 40, 44-45 (2nd Cir., 1996)(citations omitted). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the last step, and thus

must demonstrate the existence of jobs in the economy that the claimant can perform. See, e.g., Kamerling v. Massanari, 295 F.3d 206, 210 (2d Cir.2002). When employing the five-step analysis, the Commissioner must consider four factors: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." See Brown v. Apfel, 174 F.3d 59, 62 (2nd Cir., 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.1983)).

Finally, the Commissioner must give special consideration to the findings of a claimant's treating physician. A treating physician's opinion is controlling if it is "well supported by medical findings and not inconsistent with other substantial record evidence." See Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000); see 20 C.F.R. § 416.927(d)(2). The more consistent a treating physician's opinion is with other evidence in the record, the more weight it will be accorded. See § 416.927(d)(4).

Applying the required five-step framework to plaintiff, the ALJ found that (1) plaintiff was not engaged in substantial gainful activity since May 15, 2002; (2) plaintiff has severe medical impairments: cervical spine stenosis, status post discectomy and fusion and lumbar arthropathy; (3) her impairments did not meet one of the listed impairments; (4) plaintiff was not capable of performing her past relevant work as a nurse; and (5) she retained the residual functional capacity to perform jobs that exist in significant numbers in the national economy.  (Tr. 31, 32). He concluded that based on a

residual functional capacity for the full range of sedentary work, and considering the claimant's age, education, and work experience, he found her to be not disabled.  (Tr. 32.)

Plaintiff launches several challenges to the ALJ's conclusion that she was not entitled to benefits. She argues that the ALJ's disability determination is contrary to substantial evidence in the record because the ALJ ignored or misconstrued substantial medical evidence, including the medical assessments submitted by her treating physicians. Plaintiff also argues that the ALJ did not fully and adequately develop the administrative record and that he misapplied the treating-physician rule.

## The ALJ Improperly Applied The Treating Physician Rule

The ALJ erred in not giving controlling weight to the opinion of plaintiff's treating physician, Dr. Rogers that "considering her severe persistent pain in the right arm and neck as well as the episodic right leg pain with recurrent bilateral leg weakness, markedly disturbed sleep and consequent chronic fatigue, it appears that Tammy has marked limitations in essentially every respect."  (Tr. 30.)  When a treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record" it must be given controlling weight.  Shaw v. Chater, 221 F.3d 126 (2d Cir. 2000); Section 416.927(d)(2).  Because Dr. Rogers' opinion was supported by the substantial, objective evidence contained in the record, I find that his opinion is to be given controlling weight, and that based on his opinion, along with the opinions of Dr. Gregorie, and the objective

evidence in the record, the plaintiff is disabled under the terms of the Social Security Act.

Plaintiff was involved in a motor vehicle accident on August 28, 1996 and was initially diagnosed with a chronic neck strain/sprain. An MRI of her cervical spine on February 17, 1998 revealed moderate compression of the cervical cord anteriorly and posteriorly at C5-6 disc space level, secondary to degenerative discogenic disease. (Tr. 294.) She came under the care of Dr. Kung, a neurosurgeon on March 11, 1998 for complaints of chronic neck pain radiating down both arms with tingling, low back pain, and pain in left leg. Dr. Kung felt that due to the degree of compression of the spinal cord, surgical decompression was needed to prevent spinal cord damage. After discussing the risks and benefits to the plaintiff, she expressed a concern about the risks of surgery and wanted time to think about it. (Tr. 121.) She had a follow-up visit with Dr. Jodi Levitt, a neurosurgeon on April 21, 1998 and still was unable to make a decision regarding her surgery. (Tr. 136.) After a visit with Dr. Gleason, a neurosurgeon, on August 27, 1998, a review of a follow-up MRI revealed significant narrowing of the spinal canal from C4 to C6 and a disc herniation at C5-6. (Tr. 131-133.) She continued treatment with Dr. Rogers for complaints of pain in her back, right buttock, and intermittent pain in the right leg. She was again advised to reconsider surgery. (Tr. 185.)

She then came under the care of Dr. Eric Gregorie on August 18, 2004, a neurosurgeon who took over for Dr. Levitt. At this time, she complained of a clumsy-type sensation in her lower extremities with

walking.  An MRI on October 12, 2004 revealed increased central spinal stenosis and cord compression which had advanced from moderate to severe.  She had moderate to severe central stenosis at C4-C5 with disc herniation.  (Tr. 250.)  After a return visit with Dr. Rogers on August 8, 2005, during which she complained of severe bilateral leg pain, she then saw Dr. Gregorie on August 11, 2005.  On August 30, 2005, plaintiff underwent surgery for multilevel anterior cervical discectomy and fusion with plate fixation.

After her surgery, she continued to complain of pain in her anterior neck on the right with radiation to the scapulae and arm which increased with range of motion.  She complained of the inability to sleep at night and a limitation in her ability to sit and stand and lift her arms above her head.  (Tr. 29.)  According to the transcript, plaintiff, at various times attempted to relieve her pain with Ibuprofen, Gabapentin, Cymbalta, Elavil, Ultram, Aleve, Percocet, Ketorolac, and Methadone, all without significant success.  (Tr. 29.)

In finding the plaintiff not disabled, the ALJ selectively relied upon the 2005 opinion of her treating physician, Dr. Thomas Rogers but gave his 2007 opinion limited weight.  In a report to the Social Security Administration dated December 12, 2005, Dr. Rogers opined that the plaintiff could frequently lift and carry up to 10 lbs. and in an eight-hour work day, she could sit for eight hours, one hour without interruption; stand for five hours, one hour with interruptions; and walk for four hours, one hour without interruption.  Plaintiff was not limited in her ability to use her hands or feet.  (Tr. 330-334.)  The ALJ accepted this report and found that it was consistent with the

objective medical evidence in the longitudinal record of medical care. (Tr. 122.)

However in February 2007, Dr. Rogers, reported that the plaintiff had considerable sleep disruption resulting in chronic fatigue; recent episodes of bilateral leg weakness in which she almost fell, and persistent pain localized in her right neck and arm.   (Tr. 331-337.) He concluded that ". . . it appears that Tammy has marked limitations in essentially every respect.  Methadone was added at the time of this visit."  (Id. 337.)   The ALJ gave this assessment limited weight because "there has been neither satisfactory explanation nor objective evidence to explain the radical difference in Dr. Rogers' current [2007] assessment regarding claimant's limitations compared with his earlier [2005] assessment.  Although there have been MRIs in between these assessments, none have revealed any acute problem or significant increase in findings that would lead to the alleged pain and limitations."  (Tr. 30.)

I find, however, that the ALJ's decision to disregard Dr. Rogers 2007 opinion is erroneous.  Dr. Rogers' 2007 report, read together with a report dated February 28, 2007 submitted by Dr. Gregorie, was entitled to be given controlling weight by the ALJ.  In Dr. Gregorie's February 28, 2007, report, he noted that "an MRI done today compared to one done on 01/2006 reveals the evolution of a disc at the C3-C4 level, somewhat eccentric to the left."  (Tr. 360.)(emphasis added)  The MRI referred to in the report was taken after Dr. Rogers' 2005 evaluation, and before his 2007 evaluation.  Dr. Gregorie's report stated that "[plaintiff's] recent MRI shows that she has evolved a small central

disc at the C3-C4 level which was does touch the cord, but is not clearly resultant [in] any compression." (Emphasis added.) Accordingly, contrary to the ALJ's finding that no objective evidence supported the change in Dr. Rogers' opinion, it is clear that the February, 2007 MRI does constitute objective evidence of a change in plaintiff's condition that would support a revised opinion with respect to plaintiff's inability to perform work-related tasks.

Moreover, in Dr. Gregorie's February, 2007 report, he indicated that because of the change in plaintiff's condition, he believed that she would eventually require a fusion of her injured discs. (Tr. 360.) He also explained that "when surgery becomes necessary, I have told her that I would like her to proceed discectomy with fusion with a collar for fixation and not resort to removal of the plate, which is currently in place." (Id.) This evidence further supports a finding that Dr. Rogers' 2007 assessment was based on a significant change in the plaintiff's condition.[1]

### Conclusion

Based on the substantial medical evidence contained in the record, I find that the plaintiff is disabled within the meaning of the Act. I further find that the ALJ erred in failing to give controlling weight to the claimant's treating physicians' opinions as to the extent of her

---

[1] Although Dr. Gregorie opined twice in 2005 that the plaintiff was disabled, the ALJ disregarded both of these opinions on grounds that Dr. Gregorie submitted those opinions in connection with plaintiff's application for Workers' Compensation Benefits-a program which differs from Social Security in defining what constitutes a disability. (Tr. 30, 31.)

pain and limitations which was supported by objective medical evidence in the record.   Accordingly The defendant's motion for judgment on the pleadings is denied and the plaintiff's cross- motion for judgment on the pleadings is granted.   The ALJ's determination that the plaintiff is not disabled is reversed, and the case is remanded to the Commissioner for calculation and payment of benefits in accordance with this decision.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
Michael A. Telesca
United States District Judge

DATED: October 6, 2008
       Rochester, New York